IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KRYSTAL HOWARD**<br><br>**Plaintiff,**<br><br>v.<br><br>**LOUISIANA HEALTH CARE CONSULTANTS, LLC and BOB DEAN, JR.**<br><br>**Defendants.** | CIVIL NO. 3:22-CV-491 |

## COMPLAINT

Plaintiff Krystal Howard asserts her causes of action against defendants Louisiana Health Care Consultants, LLC and Bob Dean Jr. as follows:

### THE PARTIES

1. Plaintiff is Krystal Howard, a person of age and majority, a Louisiana citizen, and a resident of Thibodaux in Lafourche Parish.

2. Defendant is Louisiana Health Care Consultants, LLC ("LHCC"), a domestic limited liability company organized, headquartered, registered, and actively doing business in Louisiana, with its headquarters located in Baton Rouge, Louisiana.

3. Upon information and belief, LHCC has a single member, Bob Dean, Jr.

4. Defendant is Bob Dean, Jr., solely in his individual capacity, a person of age and majority and upon information and belief a Louisiana citizen or, alternatively, a Georgia citizen.

### JURISDICTION AND VENUE

5. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-2 *et seq.* (Title VII) as more particularly set-out herein.

6. The Court has supplemental, subject-matter jurisdiction over Ms. Howard's Louisiana state

1

law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to her federal law claims that they form part of the same case or controversy as more particularly set-out herein.

7. The Court has personal jurisdiction over LHCC because it is a domestic limited liability company organized in Louisiana, headquartered in East Baton Rouge Parish, and registered and actively doing business in Louisiana, and, through its registered agents for service of process, is present within Louisiana at the time this suit commenced.

8. Venue for Ms. Howard's Title VII claims is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3) (Title VII's venue provision) because (1) the unlawful employment practice alleged herein was committed within this judicial forum (specifically, East Baton Rouge Parish), (2) upon information and belief the employment records relevant to this action are found in this judicial district (specifically, East Baton Rouge Parish), and (3) but for the unlawful employment practice, Ms. Howard would have been employed in this district (specifically, East Baton Rouge Parish).

9. Venue for Ms. Howard's supplemental state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because LHCC and Bob Dean, Jr. are susceptible to this Court's personal jurisdiction in this forum.

10. Alternatively, venue for Ms. Howard's supplemental state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because LHCC and Bob Dean, Jr.'s unlawful acts giving rise to this lawsuit, as well as Ms. Howard's resulting injuries and damages, occurred within this judicial district (specifically, East Baton Rouge Parish) and, accordingly, a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

## PROCEDURAL AND STATUTORY REQUIREMENTS

11. Upon information and belief, LHCC employed more than 500 employees in each of 20 or more calendar weeks in either the calendar years 2020 or 2021.

12. In approximately 2007, LHCC hired Ms. Howard as a full-time, hourly employee.

13. Ms. Howard was continuously employed by LHCC until approximately November 17, 2021, at which time Ms. Howard resigned from her employment because her working conditions were so objectively intolerable and harassing as to constitute a constructive discharge.

14. At the time of her constructive discharge, LHCC employed Ms. Howard as the Director of Finance and Billing and her immediate supervisor was Bob Dean, Jr.

15. On or about April 14, 2022, within 300 days of her constructive discharge, Ms. Howard timely filed an EEOC Charge of Discrimination with the EEOC New Orleans Field Office (which, because of work-sharing agreement with the Louisiana Commission on Human Rights, was automatically accepted for filing with the LCHR, terminated, and referred to the EEOC for processing) alleging that LHCC unlawfully subjected Ms. Howard to sexual harassment and a hostile work environment based on sex which ultimately resulted in Ms. Howard's constructive discharge (EEOC Charge No. 461-2022-01336).

16. On May 2, 2022, the EEOC issued Ms. Howard a Notice of Right to Sue in this matter.

17. Ms. Howard timely filed this complaint within 90 days of receiving the EEOC's Notice of Right to Sue letter.

## FACTS

**A.  The Plaintiff – Krystal Howard**

18. Krystal Howard is a 38-year-old woman mother who lives with her husband and children in Thibodaux, Louisiana.

19. In approximately 2007, LHCC hired Ms. Howard as a full-time employee.

20. In approximately 2015, LHCC promoted Ms. Howard to the position of Director of Finance and Billing.

21. In the wake of Hurricane Ida, Ms. Howard began reporting directly to Mr. Dean on approximately August 26, 2021.

22. Ms. Howard was employed by LHCC until her constructive discharge on approximately November 17, 2021.

**B.    The Defendant – Louisiana Health Care Consultants, LLC**

23. LHCC is a limited liability company organized in Louisiana and headquartered in Baton Rouge.

24. At all relevant times in this case, LHCC was in the business of owning, operating, and managing elder care homes and facilities throughout Louisiana.

25. At all relevant times in this case, LHCC maintained an administrative office and headquarters in Baton Rouge, Louisiana, to which Ms. Howard was assigned. However, Ms. Howard generally worked remotely from her home or at other LHCC offices or facilities.

26. Upon information and belief, LHCC has a single member, Bob Dean, Jr.

27. At all times relevant to this lawsuit, including at the time of Ms. Howard's constructive discharge on approximately November 17, 2021, Ms. Howard's immediate supervisor was Bob Dean, Jr.

28. Mr. Dean's wife, Karen Dean, also communicated with Ms. Howard and, at times, gave her work instructions apparently on behalf of Mr. Dean.

**C.    LHCC and Bob Dean, Jr. Subjected Ms. Howard to an Outrageous, Sexually Harassing, and Sex-Based Hostile Work Environment**

29. On approximately August 26, 2021, and in the wake of Hurricane Ida, Ms. Howard began

4

reporting directly to Bob Dean, Jr.

30. Beginning in approximately September 2021 and continuing through and after Ms. Howard's constructive discharge on approximately November 17, 2021, she was routinely and continuously sexually harassed by Dean.

31. Between September and November 2021, Dean sent hundreds of obscene text messages, photographs, and videos to Ms. Howard, propositioned her for sex, and subjected her to verbal and sexually obscene harassment over the telephone.

32. Dean's text messages included multiple pictures of Dean's genitals, links to pornographic videos, declarations of Dean's supposed love, propositions for sex, and at least one video purporting to show Dean performing a sex act on himself in the shower.

33. For example, on November 14, 2021, Dean texted Ms. Howard "I want you" and "I want your ***** really bad and you know I do just let me *** it if And **** your **** PLEZ please".[1]

34. During multiple work phone calls between Dean and Ms. Howard, Dean refused to discuss work and instead graphically described sexual experiences between him, his wife, other women, and animals.

35. When Dean finished his obscene stories, he would yell at Ms. Howard to get back to work.

36. Ms. Howard was so shocked and dumbfounded by Dean's behavior she was stunned into silence and did not know how to respond.

37. Ms. Howard also feared losing her job if she directly confronted Dean.

38. Ms. Howard responded the only way she could think: she refused to acknowledge the misbehavior, never responding at all to Dean's grotesque text messages, and remaining silent

---

[1] Plaintiff has chosen to partially redact the most offensive language and depictions in this public document using asterisks. Dean's actual messages to Ms. Howard were not redacted and include the full, unedited, offensive language.

during his obscene phone calls.

39. Instead, Ms. Howard only interacted with Dean when he sent work related text messages and discussed work related matters over the phone.

40. But this appeared to only enrage and further instigate Dean.

41. At other times Dean heaped praise and gifts on Ms. Howard, one time giving her a $25,000 raise and a new company vehicle.

42. However, Ms. Howard did complain about Dean's behavior during this period of time to many other people within LHCC's management, specifically asking for help and describing Dean's harassment, explicitly asking for someone to stop Dean's behavior.

43. For instance, Ms. Howard complained about Dean's behavior to LHCC Vice-President Jeff Demars.

44. Demars was sympathetic but told Ms. Howard there was nothing that anyone could do; that Dean was essentially out of control; and that Ms. Howard should begin looking for other employment so she could eventually resign and escape.

45. When Ms. Howard made complaints about Dean's behavior to others in management, she was told that Dean often harassed other women and there was nothing that could be done because Dean was the owner of the company.

46. Starting on approximately November 10, 2021, Dean's wife, Karen, began spreading false rumors to LHCC employees that Ms. Howard was having an affair with Dean.

47. Karen Dean also began sending angry messages to Ms. Howard directly accusing her of having an inappropriate relationship with Dean.

48. First, this was completely untrue. Ms. Howard never had an affair with Dean; never touched Dean; and never encouraged or otherwise acknowledged Dean's obscene harassment.

49. In reality, Ms. Howard was victimized by Dean, and Ms. Howard does not know why Karen Dean began these rumors or was angry with her.

50. The continuous harassment from Dean created an objectively and subjectively unwelcome, pervasive, severe, and intolerable work environment and caused Ms. Howard to suffer incredible amounts of stress, anxiety, and loss of enjoyment of life.

51. Dean's harassment also made it virtually impossible for Ms. Howard to effectively carry out her job responsibilities because her immediate supervisor (Dean) often refused to discuss pertinent work matters and would only focus on his obscene harassment.

52. On November 17, 2021 forced with the reality that not only was Dean out of control, but that LHCC management would not stop him, Ms. Howard resigned in constructive discharge.

53. Two days later, on November 19, Dean responded by telling Ms. Howard they would "get married someday," and then Dean sent Ms. Howard more pictures of his genitals.

54. Considering Dean's obscene harassment in its entirety, Dean's behavior was shocking, outrageous, intolerable, and beyond the bounds of decency in our civilized community.

55. Dean's harassment was intentional, and Dean knew or must have known that his harassment would cause Ms. Howard (or any woman) extreme and severe emotional distress.

56. Dean persisted anyway until Ms. Howard was forced to resign to escape.

**D.   The Aftermath**

57. Because of Dean's unlawful sexual harassment, as well as and LLHC's failure to take any action to stop Dean or mitigate his hostile work environment, Ms. Howard was constructively discharged and suffered lost wages and other costs.

58. Because of Dean's unlawful sexual harassment, as well as and LLHC's failure to take any action to stop Dean or mitigate his hostile work environment, Ms. Howard has suffered extreme

emotional distress, mental anguish, fear, and loss of enjoyment of life.

## CAUSES OF ACTION

**A. Unlawful Sex-Based Discrimination in the form of Sexual Harassment and Hostile Work Environment under Title VII against LLHC**

59. Ms. Howard states a cause of action for sex-based discrimination in the form of unlawful sexual harassment and hostile work environment against LHCC under Title VII.

60. Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race, color . . . sex, or national origin[.]" 42 U.S.C. §2000e-2(a)(1).  An employer illegally demotes, terminates, or constructively discharges an employee based on his protected status when the status is at least one of the factors motivating the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).  In a Title VII action, an employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action.  *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

61. Title VII also prohibits the creation of a sex-based, hostile work environment.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (so holding).  A work environment becomes "hostile" as a matter of law when discrimination "destroys a protected classmember's opportunity to succeed in the work place[,]" *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999), or when the harassment "detract[s] from employees' job performance, discourage[s] employees from remaining on the job, or keep[s] them from advancing in their careers. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1993).

62. Harassment is unlawful when it is "severe or pervasive [enough] to alter the conditions of

the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Commission*, 586 F.3d 321, 328 (5th Cir. 2009). A plaintiff states a prima facie case for status-based hostile work environment by showing "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that harassment was based on [that status]; (4) that the harassment affected a term, condition, or privilege of her employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action." *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 858–59 (S.D. Tex. 2010).

63. In this case, as alleged throughout this complaint, LHCC and Bob Dean, Jr.'s sexual harassment created a continuing, adverse, and tangible hostile work environment against Ms. Howard based on her sex. Dean's harassment, his obscene behavior, his propositions for sex, and his verbal abuse, were so objectively and subjectively awful that it completely destroyed Ms. Howard's ability to do her job and succeed at work. Any person in Ms. Howard's position would have felt compelled to resign to escape. No legitimate employer would have tolerated Dean's outrageous misconduct.

64. Dean knew or should have known that his behavior was unlawful and inappropriate. Any employer knows it is harassing and unlawful to send unsolicited photos of his genitals and propositions for sex to an employee (as just two examples of Dean's many outrageous instances of misconduct).

65. Dean knew or should have known his "advances" were unwelcome because Ms. Howard never encouraged the misbehavior and always and obviously refused to acknowledge the harassment. Any person in Dean's position would have understood that Ms. Howard was rebuffing him. Dean continued to harass Ms. Howard anyway.

66. Moreover, Dean's harassment was necessarily the harassment of LHCC itself because

Dean was the owner and chief executive of LHCC.

67. Moreover, when Ms. Howard complained about Dean to LHCC's other officers and managers, she was told that Dean could not be stopped, and she should simply resign. These managers knew or should have known that Dean's actions were unlawful under both federal and state law, and these managers and knew or should have known that their failure to protect Ms. Howard made LLHC liable for Dean's actions, but LHCC's did nothing anyway.

68. Accordingly, LHCC is liable, both directly and vicariously through its owners, managers, and employees, for all actual and statutory damages suffered by Ms. Howard resulting from the hostile work environment Dean created and Ms. Howard's constructive discharge, including, but not limited to, back pay, front pay or reinstatement, compensatory damages, non-compensatory damages, mental anguish, emotional distress, loss of enjoyment of life, out-of-pocket expenses, legal costs, pre-judgment and post-judgment interest, punitive damages up to the Title VII statutory cap, Ms. Howard's reasonable attorney's fees and actual costs incurred in this action, and all other appropriate, legal and equitable relief.

**B.    Unlawful Sex-Based Discrimination in the form of Sexual Harassment and Hostile Work Environment under the LEDL against LLHC**

69. Ms. Howard states a cause of action for sex-based discrimination in the form of sexual harassment and hostile work environment against LHCC under the Louisiana Employment Discrimination Law ("LEDL").

70. Under the LEDL, no employer may discriminate against an employee based on her sex. La. Rev. Stat. Ann. § 23:332 *et seq.* Louisiana's anti-discrimination statute is modeled after Title VII and analysis under the two statutes is functionally identical. *See e.g.*, *Alderman v. Great Atl. & Pac. Tea Co.*, Inc., 332 F.Supp.2d 932, 936 (E.D. La. 2004) (noting "[b]ecause of its doctrinal similarity to Title VII, and the related social goals of both statutes, Louisiana courts routinely look

to Title VII to interpret the LEDL").

71. Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims of unlawful sexual harassment and hostile work environment under Title VII against LHCC, LHCC's conduct likewise violates the LEDL, and LHCC is liable to Ms. Howard for all her damages arising from LHCC's unlawful sexual harassment and hostile work environment, including but not limited to back pay, front pay or reinstatement, compensatory damages, non-compensatory damages, Ms. Howard's reasonable attorney's fees and actual costs incurred in this action, and all other appropriate, legal and equitable relief.

**C.    Intentional Infliction of Emotional Distress Against Bob Dean, Jr. (in his Individual Capacity) under Louisiana Law**

72. Ms. Howard states a cause of action for intentional infliction of emotional distress against Bob Dean, Jr., in his individual capacity, under Louisiana tort law, specifically La. Civ. Code Art. § 2315.

73. Under Louisiana law, "in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "A plaintiff's status as an employee may entitle [her] to a greater degree of protection from insult and outrage by a supervisor with authority over [her] than if [she] were a stranger." *Id.* The distress suffered must be such that no reasonable person could be expected to

endure it and liability arises "only where the mental suffering or anguish is extreme." *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559, 570 (La.1990). The court must examine the actor's desire or knowledge that emotional distress would be afflicted upon a person "in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities." *White*, at 1210.

74. In this case, as alleged throughout this complaint, Bob Dean, Jr. committed a multitude of sexually harassing acts against Ms. Howard, some of which standing alone were patently extreme and outrageous. When considered in totality, the campaign of harassment Dean waged against Ms. Howard was indecent, severe, objectively offensive, and completely intolerable to our civilized community. Nor was Dean merely acting as a private citizen who held no special power over Ms. Howard. Rather, Dean was Ms. Howard's employer and direct supervisor, meaning he wielded the utmost financial power and leverage over her such that Ms. Howard was entitled to a "greater degree of protection from insult and outrage" than if Dean and Ms. Howard were merely strangers or non-work acquaintances. Dean knew or should have known that his behavior – including sending repeated and unsolicited pornographic photos and videos of himself and others to Ms. Howard, propositioning Ms. Howard for sex, and forcing her to listen to his graphic descriptions of his sexual acts – would cause extreme emotional distress to Ms. Howard (or any human being). Dean knew or should have known that this behavior directed towards his employee would cause even greater emotional distress. Ms. Howard did, in fact, suffer severe emotional distress, mental anguish, fear, worry, and anxiety because of Dean's misconduct.

75. Accordingly, Bob Dean, Jr.'s conduct constitutes unlawful intentional infliction of emotional distress, and Dean is liable to Ms. Howard for all her damages arising from his misconduct, including Ms. Howard's compensatory and non-compensatory damages.

**JURY DEMAND**

Ms. Howard demands a trial by jury on all issues and causes of action in this matter.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Krystal Howard prays that her complaint be deemed good and sufficient; that it summons be served upon defendants Louisiana Health Care Consultants, LLC and Bob Dean, Jr.; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendants (1) declaring that LHCC – through Bob Dean, Jr. and its other employees – did sexually harass Ms. Howard and subject her to an unlawful, hostile work environment based on her sex under Title VII and the LEDL; (2) declaring that Bob Dean, Jr. did intentionally inflict emotional distress upon Ms. Howard in violation of Louisiana tort law; (3) awarding plaintiff the legal and equitable relief she is due with respect to plaintiff's federal and state-law claims, up to and including lost back wages, lost front wages or reinstatement, compensatory damages, non-compensatory damages, reasonable attorney's fees, litigation costs, statutory damages and punitive damages (under Title VII only); and (4) all other legal and equitable relief to which plaintiff may be entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
Alec W. Szczechowski (Bar #38422)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com
Email: alec@vogeltanz.law

*Attorneys for Krystal Howard*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KRYSTAL HOWARD**<br><br>**Plaintiff,**<br><br>v.<br><br>**LOUISIANA HEALTH CARE CONSULTANTS, LLC and BOB DEAN, JR.**<br><br>**Defendant.** | **CIVIL NO. PENDING** |

## DECLARATION OF KRYSTAL HOWARD

I, Krystal Howard, am over the age of 18 years, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts are true and correct to the best of my knowledge and recollection at the time this declaration is made:

1. I am the named plaintiff in the lawsuit *Howard v. Louisiana Health Care Consultants, LLC et al.* soon to be filed in the United States District Court for the Middle District of Louisiana.

2. I authorized my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3. I verify that, at the time of its filing, each allegation of the Complaint (either as directly stated or as stated in the alternative) is true and correct to the best of my knowledge, information, memory, and belief.

Executed on this date ____7/19/2022____

DocuSigned by:

_____
8FE0997A32C44A6...
Krystal Howard